UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 2:13-cv-130-KKC

SCOTT WELLS                                                                                                    PLAINTIFF

V.                                              **OPINION & ORDER**

CAROLYN W. COLVIN, Acting
Commissioner of Social Security                                                                DEFENDANT

\* \* \* \* \* \* \* \* \*

The plaintiff, Scott Wells, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB")and Supplemental Security Income ("SSI") benefits. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence and was decided by the proper legal standards.

**I.     OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1)     If the claimant is currently engaged in substantial gainful activity, he is not disabled.

(2)     If the claimant is not doing substantial gainful activity, his impairment must be severe before she can be found disabled.

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent him from doing past relevant work, he is not disabled.

(5) Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Id*. The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th

Cir. 1994). "Substantial evidence" is defined as "more than a mere scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id*. Rather, the Court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II. WELLS' ADMINISTRATIVE RECORD

Wells filed his current applications for DIB and SSI on June 23, 2010 [TR 209-219][1]. He claims that he became disabled and unable to work on April 15, 2006 due to cervical and lumbar degenerative disc disease, status post cervical fusion at C6-7 in December 2006; dysthymic disorder with anxious features; a cognitive disorder; and personality disorder [TR 201-08, 234-42]. Wells' claims were denied initially and upon reconsideration. At his request, a hearing before an administrative law judge ("ALJ") was held on November 15, 2011 [TR 39-70].

At the hearing, Wells testified that he was fifty-two years old [TR 45]. He described his previous work experience as a painter, a drywall hanger and finisher, and a janitor [TR 49, 50]. Wells testified that he was in special education classes until he left school after eighth grade [Tr

___

[1] Wells filed a prior application for DIB on November 8, 2006, which was denied [TR 71-72, 201-208]. He did not appeal that claim after the initial denial.

3

56]. He cannot read or write, and has very limited math skills [TR 56, 61]. He explained that he stopped working because his job required him to be on his feet, which hurt his back [TR 46]. However, he did state that he might be able to work if he were allowed to sit down with an option to move around [TR 47].

Also at the hearing, the ALJ heard testimony from the vocational expert ("VE"), William Cody. He was asked to consider the following hypothetical individual who has the following limitations:

> able to lift and carry up to 25 pounds and sit, stand, and walk for six hours each out of an eight-hour day, can frequently stoop, kneel, crouch, and crawl, who needs to avoid concentrated exposure to vibration, is able to understand and remember simple instructions and can sustain attention for simple tasks for extended periods of two-hours segments in an eight-hour day, and who is limited to only occasional contact with the public.

[TR 63-64]. Based on these hypothetical limitations, and assuming an individual with Wells' vocational factors, the VE opined that there are jobs that exist in significant numbers in the national economy that Wells could perform [TR 64-65].

After considering all the evidence in the administrative record, including the testimony of Wells and the VE, the ALJ issued a decision finding Wells not disabled on December 7, 2011 [TR 19-30]. In reaching his decision, the ALJ first determined that Wells met the insured status requirements of the Social Security Act through December 31, 2009. The ALJ then began his analysis at step one by determining that Wells has not engaged in substantial gainful activity since April 15, 2006 ( the alleged onset date) [TR 21].

At step two, the ALJ found that Wells suffers from the following severe impairments: degenerative disc disease; status post surgery causing residual neck and back pain; dysthymic

4

disorder with anxious features; borderline intellectual functioning; and personality disorder [TR 22]. Continuing on to the third step, the ALJ determined that these impairments, alone or in combination, are not associated with clinical signs and findings that meet or equal in severity any of the listed impairments [TR 23]. Next, the ALJ reviewed the record to determine Wells' residual functional capacity, or RFC. An RFC is the assessment of a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1). In this case, the ALJ found that Wells has the following RFC: able to lift and carry up to 25 pounds, walk and/or stand for 6 hours in an 8-hour workday; sit for up to 6 hours in an 8-hour workday; frequently stoop, kneel, crouch or crawl; must avoid concentrated exposure to vibration; can understand and remember simple instructions; can sustain attention for simple tasks for extended periods of two-hour segments in an 8-hour day; and can only have occasional contact with the public [TR 25].

Based on this RFC and the testimony of the VE, the ALJ determined at the fourth step that Wells could not perform his past relevant work due to the medium, heavy, and very heavy exertional requirements of those positions [TR 29]. However, relying on the VE's finding that there are a significant number of jobs in the national economy that an individual with Wells' vocational factors and RFC could perform, the ALJ found that Wells was not disabled from April 15, 2006 through the date of his decision [TR 29-30].

Wells subsequently requested review by the Appeals Council. The Appeals Council denied Wells' request for review on May 24, 2013 [TR 1-3]. He has exhausted his administrative remedies and filed a timely action in this Court. This case is now ripe for review

under 42 U.S.C. § 405(g).

## III.  ANALYSIS

In support of his appeal, Wells asserts two arguments. First, he argues that the ALJ improperly evaluated the applicability of Listing 12.05(C) at step three. This listing, "Intellectual Disability," is contained in 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.0(5). It provides as follows:

> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptative functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C or D or satisfied. . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 to 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05(C). The burden is on Wells to demonstrate that his condition meets this impairment. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ determined that Wells' impairment did not meet this listing for two reasons. First, the ALJ found that Wells failed to present evidence of significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period. Substantial evidence supports this finding. Adaptive functioning

6

includes a claimant's "effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." *Heller v. Doe*, 509 U.S. 312, 329 (1993). While the ALJ acknowledged that Wells performed poorly in school and claimed to be functionally illiterate, there is no evidence that his poor school performance was the result of significant subaverage intellectual functioning. Rather, the evidence shows that Wells told Dr. Lester that he was unable to complete a year of school because his family moved around a lot [TR 529]. He also reported to abusing drugs and drinking alcohol while still in school [TR 522]. *See e.g. Peterson v. Commissioner*, 2014 WL 223655, at *7 (6th Cir. Jan. 21, 2014) ("[N]either circumstantial evidence such as school records nor a history of special education combined with an adult IQ score are necessarily enough to demonstrate that a claimant had adaptive functioning deficits before age twenty-two"); *Sheeks v. Commissioner*, 544 Fed.Appx. 639, 642 (6th Cir. 2013)(fact that claimant attended special education classes in elementary school because he could not pay attention and failed to finish high school did not demonstrate Listing 12.05(C)'s requirement of onset before age twenty-two); *Hayes v. Commissioner*, 357 Fed.Appx. 672, 676-77 (6th Cir. 2009)("This Court has never held that poor performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two").

Wells contends that the ALJ erred in relying on IQ tests performed while he was in school. However, these tests, ranging from a 90 at age 10 to a 72 at age 13, were properly relied upon by the ALJ not to assess his current level of functioning, but rather to determine whether

7

his subaverage general intellectual functioning initially manifested during the developmental period. They provide substantial evidence in support of the ALJ finding. Wells has not come forward with any information to establish the onset of subaverage intellectual functioning before age 22. Arguing that it is "highly likely" that his functioning diminished at some point after age 13 is simply not enough.

Second, the ALJ found that Wells did not satisfy this listing because he failed to present evidence of a valid verbal, performance, or full scale IQ of 60 to 70. He contends that the ALJ should have ordered additional IQ testing. However, because the ALJ found that Wells failed to demonstrate significant deficits in adaptive functioning manifested during the developmental period, the ALJ found that it was unnecessary to order additional IQ testing. The Court agrees. Even if Wells were to test in the 60-70 range, he would not be able to satisfy the first requirement of the listing. Consequently, Wells has failed to carry his burden of establishing that his impairments meet or equal Listing 12.05(C).

The Court now turns to Wells' second alleged error. He argues that the ALJ failed to properly account for his "moderate" limitation in maintaining attention, concentration, persistence, and pace when questioning the VE. However, a review of the record reveals that the ALJ fully accounted for these restrictions when he found that Wells had the RFC to "understand and remember simple instructions; sustain attention for simple tasks for extended periods of two-hour segments in an 8-hour day; and [have] only occasional contact with the public" [TR 25]. These restrictions are supported by the opinions of Dr. Lester, a consultative examiner, and Dr. Jacobson, a State agency psychological consultant [TR 98-99, 530-31]. Dr.

Lester opined that Wells had a "fair" ability to maintain concentration and attention and to understand, remember, and carry out simple instructions [TR 530]. He further noted that Wells' "ability to deal with the stresses of day to day work would appear to be moderately impaired" [TR 531]. Dr. Jacobson, after reviewing the entire record, including Dr. Lester's report, concluded that Wells was able to understand and remember simple instructions; sustain attention for simple tasks for extended periods of 2-hour segments in an 8-hour day; tolerate coworkers and supervisors in a work setting with only occasional, casual public contact; and adapt to changes as needed within these parameters [TR 98-99].

The ALJ fully accounted for these limitations in the hypothetical question posed to the VE:

> So assuming an individual with the same vocational profile as the claimant who is able to lift and carry up to 25 pounds and sit, stand, and walk for six hours each out of an eight-hour day, can frequently stoop, kneel, and crawl, who needs to avoid concentrated exposure to vibration, is able to understand and remember simple instructions and can sustain attention for simple tasks for extended periods of two-hour segments in an eight-hour day, and who is limited to only occasional contact with the public. Given those limitations would there be jobs in the regional and national economy that such an individual could perform?

[TR 63-64]. The hypothetical question posed to the VE recounts a fair, complete and accurate summation of Wells' abilities and overall mental and physical state, based on the available evidence and testimony. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). Accordingly, the ALJ's reliance on the VE's response was appropriate.

For all these reasons, the Court finds that substantial evidence supports the ALJ's decision that Wells' does not have an impairment that meets or equals Listing 12.05(C). Moreover, the record reveals that the ALJ properly accounted for Wells' moderate limitations

9

in concentration, persistence, and pace in questioning the VE. Therefore, Wells' motion for summary judgment will be denied and the Commissioner's motion for summary judgment will be granted and judgment will be entered in favor of the Commissioner.

## IV. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) the plaintiff's motion for summary judgment [DE #15] is **DENIED**;

(2) the defendant's motion for summary judgment [DE #18] is **GRANTED**;

(3) the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(4) a judgment consistent with this Opinion & Order will be entered contemporaneously.

This August 6, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY